Kenneth J. WILLIAMS

v.

**LOCAL NO. 19, SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, et al.**

James F. YOUNG, on his own behalf and on behalf of all others similarly situated,

v.

**INTERNATIONAL TELEPHONE & TELEGRAPH CO., NESBITT DIVISION, et al.**

Civ. A. Nos. 71–784, 70–2103.

United States District Court,
E. D. Pennsylvania.

Feb. 21, 1973.

Alan M. Lerner, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for plaintiffs.

H. Thomas Felix, II, and Thomas Heilmann, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for IT&T, Nesbitt Div.

Steven R. Waxman, Bolger & Picker, Philadelphia, Pa., for Hershman Sheet Metal.

Louis Wilderman and Robert Rolands, Wilderman, Markowitz & Kirschner, Philadelphia, Pa., for Local #19, Sheet Metal Workers and Al Kern.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

Plaintiff, Kenneth J. Williams, and plaintiff, James F. Young, both originally brought suit in this case individually, and the cases were subsequently consolidated for trial. Both plaintiffs have the same attorney.

Plaintiff Williams alleges in his complaint facts sufficient to state a personal cause of action against Local 19, Sheet Metal Workers International Association, Al Kern, individually and as President of Local 19, the Roofing and Sheet Metal Contractors Association of Philadelphia, and the International Telephone

and Telegraph Company, Nesbitt Division, under both 42 U.S.C. § 1981 and 42 U.S.C. § 2000e. Because of plaintiff Williams' timely resort to administrative remedies on June 2, 1970, he has preserved his personal rights under both § 1981 and § 2000e.

Plaintiff Young alleges in his complaint facts sufficient to state a personal cause of action against Local 19, Al Kern, the Contractors Association, Hershman Sheet Metal Works, Inc., and International Telephone and Telegraph Company, Nesbitt Division. The vitality of plaintiff Young's rights against Nesbitt may have been undermined by his acceptance of administratively obtained adjustments of all his complaints against Nesbitt, but no such situation exists with regard to plaintiff Williams' claims against Nesbitt, or of the personal claims of either plaintiff vis a vis the other defendants previously mentioned.

■ Since plaintiff Young did not make timely administrative claims, he has lost his rights under 42 U.S.C. § 2000e and is now proceeding only under 42 U.S.C. § 1981.

Neither plaintiff has any direc claims against the defendant, Joint Apprenticeship Committee of Philadelphia and Vicinity and its members. If the status of the Joint Apprenticeship Committee were wholly distinct from the other defendants, they would not be a proper party to this action. However, the Joint Apprenticeship Committee is merely a combination of representatives of the defendant, Local 19, and the defendant, Contractors Association, which handles programs and policies relating to recruitment and entrance into the sheet metal workers trade within the jurisdiction of Local 19. It was joined by plaintiff Williams when the defendant Union took the position that a class action was inappropriate in the context of this case because the Joint Apprenticeship Committee was not before the Court and would not therefore be bound by the decrees of the Court, were sys-tematic racial discrimination proven. For reasons that will become apparent, this Court is of the opinion that the Joint Apprenticeship Committee is properly joined, and that it is appropriate for this action to proceed as a class action.

Plaintiffs seek to be declared representatives of a class of plaintiffs defined as follows:

"non-caucasian persons who at any time since January 1, 1964, are or have been

(a) members of Local No. 19 Sheetmetal Workers International Association,

(b) former members of Local 19, or

(c) potential members of Local 19 in that:

(i) They have sought admission into Local 19 (as journeymen or apprentices), or

(ii) They have sought training in sheetmetal work in preparation for seeking admission into Local 19, or

(iii) They have sought designation from Local 19 as journeymen sheetmetal workers, or

(iv) They are or have been employed as sheetmetal workers within the geographical jurisdiction of Local 19, or

(v) They have sought employment as sheetmetal workers within the geographical jurisdiction of Local 19."

■ Plaintiffs proposed class is defined by its relationship to the Union because the major thrust of plaintiffs' allegations is that there is racial discrimination against non-whites both in access to Union membership and in job assignment policies for those non-whites who have become union members. The other defendants are either individual representatives of the union, employers charged as active or passive co-conspirators without whose acquiescence and positive assistance the alleged discrimi-

nation could not exist, or representatives thereof. The Court will discuss the requirements of Federal Rule of Civil Procedure 23 seriatim as they apply to this case.

(1) *Numerosity:* The Court is satisfied that the proposed class is so numerous that joinder is impracticable. The Court notes that plaintiffs have defined the proposed class with sufficient specificity that the Court can, with reasonable ease, determine whether any given person falls within or without the class. It is unnecessary to name names as extensively as has been urged by the defendants.

■ (2) *Questions of law or fact common to the class:* There are obviously questions of fact common to the class concerning the actions and intentions of the defendant Union. It may become necessary to create sub-classes at some later time with respect to rights against the other defendants, but this does not affect the propriety of the initial determination of class. There are questions of law common to the class under 42 U.S.C. § 1981 and 42 U.S.C. § 2000e.

■ (3) *Typicality:* The claims of both plaintiffs are sufficiently typical to support a class action in this case. Both plaintiffs are non-white persons who have made prima facie sufficient claims of injury through a broad base policy of racial discrimination by the defendants manifesting itself, inter alia, in the policies controlling access to membership in and job assignment in the sheet metal workers trade within the jurisdiction of defendant, Local 19. It is true that plaintiffs, though they were once admitted to Local 19, seek to represent non-whites never so admitted. It might be argued that the interests of union members or ex-members are in some way different than those of non-members, in that members and ex-members who might win reinstatement might have some self-interest in keeping their brothers out, thereby entrenching their

own power within the union as the union's token non-whites. This view, which would greatly narrow the class in this case, was rejected by Chief Judge Joseph S. Lord, III, of this District in Mack v. General Electric Company, 329 F.Supp. 72 (1971) in allowing an employee of General Electric to represent employees injured by an alleged general policy of racial discrimination, and also those denied employment as a result of that same policy. We think *Mack* was correct. While it would be within a Court's discretion to disallow a particular plaintiff representative status in a case where the Court had reason to suspect otherwise, a Court should not disallow representative status merely on the bare possibility that a civil rights plaintiff might cynically not be in fact concerned with litigating fully the alleged broad policy of discrimination which he has challenged in his complaint. Such a thing is not to be assumed. Absent this,

"Congress has taken giant strides to legislate bias out of our economy. Given the tools that Congress has now provided, courts would be remiss if they were not used to the fullest extent. The broad Congressional purpose, expressed in the civil rights acts, of eliminating job bias can well be effectuated by allowing any Negro claiming that an employer has discriminated against him on racial grounds to sue to end all that employer's racial discrimination."

*Mack,* supra, at p. 75–76.

As was said in Jenkins v. United Gas Corporation, 5 Cir., 400 F.2d 28 (1968) at p. 32–33:

"The suit is therefore more than a private claim by the employee seeking the particular job which is at the bottom of the charge of unlawful discrimination filed with EEOC. When conciliation has failed—either outright or by reason of the expiration of the statutory timetable—that individual, often obscure, takes on the mantle of the sovereign. Newman v. Piggie

Park Enterprises, 1968, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263; Oatis v. Crown Zellerbach, [5 Cir., 398 F.2d 496] supra. And the charge itself is something more than the single claim that a particular job has been denied him. Rather it is necessarily a dual one: (1) a specific job, promotion, etc. has actually been denied, and (2) this was due to Title VII forbidden discrimination.

Considering that in this immediate field of labor relations what is small in principal is often large in principle (footnote omitted), element (2) has extreme importance with heavy overtones of public interest. . . .

In dollars Employee's claim for past due wages may be tiny. But before a Court as to which there is no jurisdictional minimum, (§ 706(f), 42 U.S.C. A. § 2000e-5(f)), it is enough on which to launch a full scale inquiry into the charged unlawful motivation in employment practices."

See also Johnson v. Georgia Highway Express, 417 F.2d 1122 (5th Cir., 1969); Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir., 1968); Developments in the Law: Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv.L.R. 1109 (1971).

■ One should always bear in mind that, even if members who were the victims of a policy of discrimination were not allowed to proceed on behalf of those denied membership as a result of that same policy, evidence of denial of membership to some persons on racial grounds would nevertheless be evidence of the existence of the policy and therefore admissible in the member's case. Civil Rights cases would be operationally the same whether the member represented the rejected candidates for membership or not. Two results might occur, both undesirable. The Court might find the evidence supported a conclusion of racial discrimination in admission and be powerless to affect it, or else the Court might find the evidence did not prove such discrimination and be powerless to bind the class of persons denied membership. In the former case, the non-members would be put to the expense of a second trial. In the latter case, the defendants would be exposed to repetitive litigation. Both cases would be judicially inefficient to no particular end. It is in the best interest of defendants and the entire proposed class that the defendants receive either an across the board clean bill of health or an across the board correction of any policy of discrimination which does exist in a single proceeding.

■■ In this regard, it may be readily seen why the Joint Apprenticeship Committee is a proper party defendant in this case. For the purposes of the Civil Rights Acts, it is merely the alter ego of the Defendant, Local 19, and the defendant, Contractors Association for the making of decisions concerning admission to the Union. Formal compartmentalization cannot be allowed to narrow the scope of inquiry in Civil Rights litigation, or to insulate discriminatory conduct otherwise properly challenged from the reach of relief. To hold otherwise would be to open the field of Civil Rights litigation to artificial compartmentalization of function by discriminatory employers or Unions to no purpose but the frustration of the Congressional Intent embodied by the Civil Rights Acts.

■■ The defendants raise various factual allegations going to the merits of plaintiffs' individual cases to show that plaintiffs are not members of the requested class since they have not been the victims of discrimination. It is well settled that a motion for the determination of a class is not a proper forum for summary judgment. See, e. g., Mersay v. First Republic Corp., 43 F.R.D. 465 (S.D.N.Y.1968); Maguire v. Trans World Airlines, 55 F.R.D. 48 (S.D.N.Y. 1972). Even if it were, the material facts of this case are much in dispute.

Defendant Hershman makes much of a comment by plaintiff Young in a previous proceeding that he did not feel that the people at Hershman discriminated against him. Yet the issue is not whether the individuals with which plaintiff came into contact at Hershman were bigotted in the every day sense, but whether Hershman as a company participated or acquiesced in an illegal act or policy of discrimination by the Union in their own hiring practices, an issue which is still unresolved.

 (4) *Adequacy of representation:* There are two criteria to be considered in determining whether a litigant is an adequate representative of a class: Whether the plaintiffs' attorney is qualified, experienced, and generally able to conduct the proposed litigation, and whether there is any probability that the suit is collusive or that the named plaintiff or plaintiffs have interests antagonistic to all or part of the class. Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir., 1968), *Mack,* supra. The plaintiffs here are represented by skilled and experienced counsel. The only arguable conflict of interest with the proposed class has already been dealt with. Further, the Court notes the obvious tenacity and sincerity of the named plaintiffs in pursuing these claims over a number of years. No serious probability of collusion, conflict of interest, or incompetency of counsel being presented, the Court finds that the named plaintiffs will fairly and adequately represent the proposed class. The Court will therefore designate this case as a class action, and define the class generally as requested by plaintiffs.

 One further issue should be resolved. It is clear that plaintiff Williams may represent all persons of the class[1] from the effective date of 42 U. S.C. § 2000e–2 (July 2, 1965) even if they have not filed administrative complaints themselves. Miller v. International Paper Co., 408 F.2d 283 (5th Cir., 1969). There is some question on the facts of this case as to whether the class cut-off date should be further back in time. The answer depends on the effect of the filing of Williams' EEOC complaint on the running of limitations on his § 1981 cause of action, and the characterization of the causes of action of various parts of the requested class under Pennsylvania Law, for analogous Pennsylvania limitations apply to causes of action under § 1981. Henig v. Odorioso 385 F.2d 491 (3rd Cir., 1967). There appears to be a great likelihood that no person qualifying for class membership before July 2, 1965 will appear or will be able to be found. The Court will therefore make the class cut-off date July 2, 1965, reserving judgment on the issues raised by the question of limitations under § 1981 until such time, if ever, as they may be raised by the appearance of a potential class member discriminated against prior to that date.

 This class action is clearly proper under Rule 23(b)(2) in that plaintiffs are seeking injunctive relief in terms generally applicable to the class. In addition, the claims for past damages are properly class claims under Rule 23(b)(3). Yet the initial issue central to both kinds of class claims is the existence of a broad policy of discrimination against non-whites. This issue, along with the claims of the individual plaintiffs, will be litigated first, and notice to the class will be dispensed with until it is resolved. This is consistent with the general policy that actions maintainable as both (b)(2) and

---

1. The Court notes here that in drawing the class, it has dropped the (b) section of plaintiffs' proposed class. Insofar as the (b) group includes any proper parties it is redundant, and insofar as it applies only to persons who were former union members by the class cut-off date and had no further contact with the union, it would be improper.

**56**

(b)(3) class actions should be treated as (b)(2) class actions and mandatory notice should be dispensed with. Such a course promotes both ease of administration and the underlying principles of Rule 23. See Moore's Federal Practice, § 23.50.

If the defendants are successful, the class will be bound, and all members of the class will be precluded from raising any claim of broad-base racial discrimination by defendants during the period in question (though, of course, claims of limited specific individual discrimination would be unaffected). If the plaintiffs are successful, notice will be given to the class so that individual members may then appear to prove their class membership and specific damages. Any individual infirmities, barring recovery, applicable to specific class members, will be dealt with at that time.

### ORDER

And now, to wit, this 21st day of February, 1973, Civil Action No. 70–2103 is hereby declared to be a proper class action under Federal Rule of Civil Procedure 23(b)(2) and shall so proceed. Civil Action No. 71–784 is likewise hereby declared to be a proper class action under Federal Rule of Civil Procedure 23(b)(2) and shall also so proceed. The class represented by the named plaintiffs in both actions shall be a single class including all non-white persons who, at any time since July 2, 1965, are or have been

(a) members of Local No. 19 Sheetmetal Workers International Association, or

(b) potential members of Local 19 in that:

(i) they have sought admission into Local 19 (as journeymen or apprentices), or

(ii) they have sought training in sheetmetal work in preparation for seeking admission into Local 19, or

(iii) they have sought designation from Local 19 as journeymen sheetmetal workers, or

(iv) they are or have been employed as sheetmetal workers within the geographical jurisdiction of Local 19, or

(v) they have sought employment as sheetmetal workers within the geographical jurisdiction of Local 19.

The two above captioned cases shall be consolidated for all purposes and notice to the class shall be dispensed with pending an adjudication on the question of liability.

It is so ordered.