Winston O. GROVES, Individually and on behalf of all others similarly situated

v.

INSURANCE COMPANY OF NORTH AMERICA.

Civ. A. No. 74–1991.

United States District Court, E. D. Pennsylvania.

April 29, 1977.

Gordon Gelfond, Philadelphia, Pa., for plaintiff.

John P. Mason, Philadelphia, Pa., for defendant.

## OPINION

DITTER, District Judge.

Plaintiff has brought this civil rights action against his former employer seeking redress of practices which he alleges are racially discriminatory. Presently before the court are plaintiff's motion to have this case designated as a class action, his motion for leave to amend the complaint to include a claim for damages on behalf of the class,

and a motion of a third party for leave to intervene. For the reasons to be stated, all three motions will be granted.

## I. *Factual Background*

The following facts are alleged in the complaint. Plaintiff, Winston O. Groves, a Negro, was first employed by the defendant, Insurance Company of North America, on a full time basis as a management trainee in its loss processing department in February of 1970. After performing successfully in a special project to reduce backlogs in the draft account unit of the department, plaintiff was made a supervisor in that unit in February, 1971, and charged with additional administrative responsibilities. At that time plaintiff was given no course of training in supervision, although other similarly situated white employees were sent to management training school. Despite this lack of formal supervisory training, plaintiff received several letters of commendation for his work as a supervisor in the draft account unit. However, at the time of Groves' performance review on February 2, 1972, he was removed from his position as supervisor and reassigned to a non-supervisory job as a statistical analyst. After Groves complained that his transfer had been effectuated without following the usual performance review procedures and that the results of the review were completely at variance with his actual performance, he was told by his supervisors that the review would be modified. The wording of the

performance review later was changed, but its substance was not and Groves was not reinstated in his former supervisory position. During this time Caucasian employees with similar training and experience were either continued at existing levels of employment or promoted. Plaintiff remained in defendant's employ as a statistical analyst until July, 1973, when, with no prospect of returning to a supervisory position, he terminated his employment with the defendant. Groves filed charges with the Equal Employment Opportunity Commission on February 10, 1972, alleging that he had been denied an opportunity for promotion because of his race and that the defendant discriminated on the basis of race in hiring, promotion and other terms and conditions of employment. By letter dated July 10, 1974, the Commission notified Groves that he was entitled to institute a civil action in the United States District Court pursuant to Section 706 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5. He has done so under Section 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981,[1] and Title VII of the 1964 Act.[2]

The complaint alleges that the defendant's failure to provide plaintiff with supervisory training and the removal of plaintiff from his supervisory position were racially motivated. It is further alleged that the defendant's action with respect to Groves are part of a continuing broad-based pattern of employment discrimination against Negroes by INA.[3] The complaint seeks

1. As the result of a typographical error, the original complaint cited 42 U.S.C. § 1983. The parties have agreed to an amendment of the complaint to read 42 U.S.C. § 1981, see Brief for Defendant at 1. I have entered an appropriate order to effect this amendment.

2. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e–5(f)(3).

3. The complaint alleges that INA discriminates against Negroes by:

 a. Failing to validate pre-employment tests which disqualify a disproportionate number of Negro applicants as compared to Caucasian applicants, and discriminating on the basis of race in both the interview and test stages of the application process.

 b. Failing to place Negroes among the operating departments of the company without regard to race.

 c. Failing to affirmatively recruit and employ Negroes.

 d. Failing to remedy the effects of racially discriminatory hiring and promotional practices which existed prior to the enactment of the Civil Rights Act of 1964.

 e. Failing to employ Negro males in management areas.

 f. Failing to provide job training for Negro employees similar to Caucasian employees.

 g. Failing to promote Negro employees at the same rate as Caucasian employees.

 h. Failing to compensate Negro employees as a group comparably with Caucasian employees.

 i. Failing to retain Negro employees at the same rate as Caucasian employees.

wide-ranging relief, including, *inter alia,* an injunction against further discrimination, various forms of affirmative action, back pay, and damages.

## II. *Class Action*

### A. *Satisfaction of Rule 23(a) and (b).*

Plaintiff seeks certification of this case as a class action pursuant to Rule 23(b)(2), or alternatively Rule 23(b)(3). The proposed class is to consist of

> [1] all Negroes currently employed by the defendant in the Philadelphia-Metropolitan area, [2] all Negroes who have been employed in said area by defendant at any time between July 2, 1965 (the effective date of the 1964 Civil Rights Act) and the present date but who are no longer so employed, and [3] all Negroes who unsuccessfully sought employment with defendant between July 2, 1965, and the present date.[4]

Before a case may proceed as a class action under either Rule 23(b)(2) or 23(b)(3), the prerequisites to a class action contained in Rule 23(a) must be satisfied. Pointing out that the burden of establishing entitlement to class certification is on the party seeking it, *Davis v. Romney,* 490 F.2d 1360, 1366 (3d Cir. 1974); *Mason v. Calgon Corp.,* 63 F.R.D. 98, 104 (W.D.Pa.1974), the defendant contends that plaintiff has failed to meet two of these prerequisites—the numerosity requirement of Rule 23(a)(1) and the typicality requirement of Rule 23(a)(3).[5]

With respect to the numerosity requirement, the complaint alleges that the proposed class will consist of approximately 200 members. This number is sufficiently large that joinder of all members would be impracticable. See e. g., *Fox v. Prudent Resources Trust,* 69 F.R.D. 74, 77 (E.D.Pa. 1975); *Newmon v. Delta Air Lines, Inc.,* 374 F.Supp. 238, 242 (N.D.Ga.1973). Defendant claims, however, that plaintiff's approximation of the size of the class is wholly speculative. While essentially conceding that this figure is only a rough estimate, the plaintiff argues that he cannot furnish a more precise figure until discovery is completed. The plaintiff also notes that it is the defendant which has control of many, if not all, of the records necessary to establish the size of the class. In this regard, I note that there is presently pending before me in this case a discovery motion in which plaintiff seeks to compel the defendant to answer interrogatories aimed at developing information about the proposed class, including, *inter alia,* its size. The defendant takes the position in its memorandum in opposition to that motion that it should not be burdened with having to submit to discovery concerning the class since this case should not proceed as a class action. While this argument might have a trace of merit in some very limited situations,[6] it smacks of a heads-I-win-tails-you-lose proposition here. The defendant would have me decide, in effect, that plaintiff has failed to satisfy the numerosity requirement because he has not obtained information about the size of the class which defendant refuses to give him on the ground that he has failed to satisfy the numerosity requirement.[7] I re-

---

j. Failing to pay to Negroes as compared with Caucasians equal wages for equal work on jobs that require equal skill, efforts and responsibility and which are performed under similar working conditions.
Complaint, paragraph 15.

4. Complaint, paragraph 6. The complaint erroneously lists the effective date of the Act as July 2, 1964.

5. The defendant makes no serious contention that plaintiff has failed to meet any of the other prerequisites of Rule 23(a) and my independent examination of the record satisfies me that the other prerequisites have been met.

6. Such a situation might arise if, for example, the case patently failed to qualify for class action treatment under Rule 23. It was on this possibility that I deferred consideration of the plaintiff's discovery motion until consideration of the class action motion. Because of the way I rule on the class action motion, the plaintiff's discovery motion now will be granted. Cf. *Presseisen v. Swarthmore College,* 71 F.R.D. 34, 43 n. 10 (E.D.Pa.1976).

7. *Mason v. Calgon Corp.,* 63 F.R.D. 98 (W.D. Pa.1974) and *Kinsey v. Legg, Mason & Co., Inc.,* 60 F.R.D. 91 (D.D.C.1973) cited in defendant's brief, are distinguishable in that in neither of those cases had defendant attempted to pre-

ject this circular reasoning. See *Presseisen v. Swarthmore College,* supra, 71 F.R.D. at 43 n. 10. Because I conclude that plaintiff has clearly satisfied all other requirements for maintenance of this suit as a Rule 23(b)(2) class action, see text infra, and because it appears highly likely from the very nature of his claim that he also will be able to satisfy the numerosity requirement upon completion of further discovery,[8] I will grant the motion for class action treatment of this case on a conditional basis as permitted by Rule 23(c)(1).[9] See *Gerstle v. Continental Airlines, Inc.,* 466 F.2d 1374 (10th Cir. 1972); *B & B Investment Club v. Kleinert's, Inc.,* 62 F.R.D. 140 (E.D.Pa. 1974); *Seligson v. The Plum Tree, Inc.,* 55 F.R.D. 259 (E.D.Pa.1972). If it later appears that the class is not in fact so numerous as to make joinder impracticable, I will entertain a motion to decertify the case as a class action.

Defendant next argues that Groves has not satisfied the requirement of Rule 23(a)(3) that the claims of the representative party be typical of the claims of the class. Specifically, INA contends that Groves' individual grievance arose from alleged discrimination in providing supervisory training and in promotions and since Groves himself had been "hired, promoted, transferred, and voluntarily quit,"[10] his claims would not be typical of Negroes who had never been hired or of present Negro employees. I do not find this argument persuasive.

As Judge Newcomer has pointed out, "[t]his Court is committed to the 'across-the-board' approach to civil rights class actions." *Paddison v. Fidelity Bank,* 60 F.R.D. 695, 698 (E.D.Pa.1973); see *Wil-*

---

vent discovery concerning the class action allegation.

8. The affidavit of Mr. Albert W. Morton, manager of personnel operations for defendant, states that there are approximately 110 Negroes employed in defendant's loss processing department alone. There would thus be at least this number in the proposed class.

9. Somewhat subsidiary to its numerosity argument, defendant contends that plaintiff's class action seeks to raise claims that go beyond the scope of the EEOC investigation that could reasonably be expected to grow out of the charge of discrimination filed by plaintiff with the Commission, and are therefore beyond the scope of a proper judicial complaint in a Title VII action. See, e. g., *Wetzel v. Liberty Mutual Insurance Co.,* 511 F.2d 199 (3d Cir. 1975), vacated on jurisdictional grounds, 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976); *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir. 1970). It is argued that when the complaint is narrowed to include only those claims of discrimination raised in plaintiff's EEOC charge, the class could not possibly be so large as to make joinder impracticable.

In support of its claim that the complaint herein goes beyond the scope of the EEOC charge, the defendant points to the "Notice of Charge of Employment Discrimination" which the Commission served on defendant. On the portion of that notice form labelled "Nature of Charge," only the boxes marked "promotion" and "terms and conditions" were checked; not checked were boxes marked "hiring," "discharge," "seniority," "job classification," "training/apprenticeship," and "qualification

testing." The defendant contends that plaintiff may not now litigate these latter claims. The short answer to this contention is that defendant has relied on the wrong document. As noted in *Sanchez,* supra, at 462, the most important consideration in evaluating the charge filed with the EEOC is the factual statement. It is not the "Notice of Charge of Discrimination" that contains the factual statement; this document is merely a standard form sent by the EEOC to the employer, advising him that the Commission has received a complaint against him. Rather, the factual statement is contained in the document entitled "Charge of Discrimination." The factual statement filed by the plaintiff herein, after giving the particulars of his individual situation provides:

There are no other Black employees in management positions in my department. I feel that I am being denied an opportunity for promotion due to my race (Black) and that INA discriminates in promotion and hiring on the basis of race (Black). INA also discriminates in terms of benefits, training and other terms and conditions of employment.

Bearing in mind that "the specific words of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow," *Sanchez,* supra at 465, I conclude that the above statement more than adequately encompasses all of the allegations of plaintiff's class action complaint. Moreover, even if plaintiff's claims here might be construed as going beyond his EEOC charge, they would nonetheless be cognizable under plaintiff's section 1981 cause of action.

10. Brief for Defendant at 10.

*liams v. Local No. 19, Sheet Metal Workers International Ass'n,* 59 F.R.D. 49 (E.D.Pa. 1973); *Mack v. General Electric Co.,* 329 F.Supp. 72 (E.D.Pa.1972). Under this approach, a person claiming to be aggrieved by any particular discriminatory employment practices of an employer alleged to be part of an overall pattern of class based discrimination may sue to end all forms of discrimination by that employer against the class. Thus in *Paddison,* supra, a present female employee claiming discrimination in salary and promotional opportunities on the basis of sex was permitted to represent, *inter alia,* all present and former female employees of the defendant, all females who had sought but were denied or declined to accept employment with the defendant because of sex discrimination, and all females who did not apply for vacancies with the defendant due to lack of knowledge of the vacancies caused by defendant's discriminatory policies. In *Williams,* supra, a race discrimination case, it was held that former non-Caucasian union members could represent, *inter alia,* a class consisting of present, former and "potential" [11] non-Caucasian union members. Similarly, in *Mack,* supra, also a race discrimination case, Chief Judge Lord of this court held that a former Negro employee whose individual grievance related primarily to promotions and training, could represent a class consisting of present and former Negro employees, as well as Negroes who had unsuccessfully sought employment with the defendant, in a suit challenging virtually every aspect of the defendant's employment practices. There are no significant differences between the relationship of the named plaintiffs in *Mack* to the class they represented in that case and the relationship of the named plaintiff here to the class he seeks to represent in this case.[12]

Having concluded that all the prerequisites of Rule 23(a) have been satisfied, I now turn to consideration of Rule 23(b). What has been said above with respect to the across-the-board approach is highly relevant here also. A claim of racially discriminatory employment policies is by its very nature a claim of action or inaction by the employer on the basis of a common characteristic of the class, here race. Thus, the requirement of Rule 23(b)(2) that "the party opposing the class has acted or refused to act on grounds generally applicable to the class" is clearly satisfied. See *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 250 (3d Cir.) cert. denied 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975) (sex discrimination); *Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711, 719 (7th Cir. 1969); *Jenkins v. United Gas Corp.,* 400 F.2d 28, 34 (5th Cir. 1968); *Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496, 499 (5th Cir. 1968). While it is quite likely that this suit also satisfies the criteria of section (b)(3) of Rule 23, it is unnecessary for me to consider the applicability of that section since under the principle of *Van Gemert v. Boeing Company,* 259 F.Supp. 125 (S.D.N.Y.1966), adopted by this Circuit in *Wetzel,* supra,

> . . . an action maintainable under both (b)(2) and (b)(3) should be treated under (b)(2) to enjoy its superior res judicata effect and to eliminate the procedural complications of (b)(3) which serve no useful purpose under (b)(2).

*Id.* at 253; see 3 B. *Moore's Federal Practice* § 23.31[1] (1975).

One other matter relating to the definition of the class requires further discussion. As noted previously, in addition to Negroes currently employed by defendant in the Philadelphia area, plaintiff seeks to represent . . . "all Negroes who have been employed by defendant in said area at any time between July 2, 1965, and the

---

11. In *Williams,* the court defined "potential" union member as being all non-Caucasian persons who within the applicable time limits had sought admission into Local 19, training in preparation for seeking admission, designation from Local 19 as journeymen, employment within Local 19's jurisdictional area, or had

actually been employed within that area. 59 F.R.D. at 52.

12. Neither do I share defendant's belief that the recent trend is away from the "across-the-board" approach to Title VII cases. See, e. g., *Presseisen,* supra.

present date" and "all Negroes who unsuccessfully sought employment with defendant in said area between July 2, 1965, and the present date." Plaintiff alleges that a pattern of discriminatory employment practices was carried out by defendant up to and including the date of the filing of the complaint. Such claims amount to allegations of continuing violations of Title VII and § 1981 and would allow the filing of a charge with the EEOC under Title VII or the institution of suit in the district court under § 1981 by a present employee of INA at any time. See *Wetzel,* supra, 508 F.2d at 246. Plaintiff thus may represent all present Negro employees of INA in the Philadelphia area on both the Title VII and Section 1981 causes of action. However, with respect to former Negro employees and those who have unsuccessfully sought employment with defendant in the Philadelphia area, the class as defined by Groves is too broad as to both the Title VII and Section 1981 causes of action. While the precise definition of the class with respect to these individuals would be different for the Title VII action than for the Section 1981 action, because at this stage of the proceedings the differences will not have any significant effect and because I conclude that the broader class is available under the Section 1981 claim, I will define the class only in terms of that claim.[13]

Congress has not provided a federal statute of limitations for Section 1981 actions so federal courts must look to the state statute of limitations governing the most nearly analogous state cause of action. See *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). The heart of this suit is a dispute involving the employer-employee relationship and its bases. 42 U.S.C. § 1981 is a statute enacted to enforce the Thirteenth Amendment's guarantee to Negroes of the equal right to contract. The applicable Pennsylvania statute is therefore 12 P.S. § 31, which provides for a six year limitation period for actions sounding in contract or interference with contractual rights. See *Wilson v. Sharon Steel Corp.,* 549 F.2d 276 at 280–281 (3d Cir. filed January 27, 1977), vacating 399 F.Supp. 403 (W.D.Pa.1975); *Beamon v. W. B. Saunders Co.,* 413 F.Supp. 1167, 1174–76 (E.D.Pa. 1976); *Dudley v. Textron, Inc.,* 386 F.Supp. 602, 606–07 (E.D.Pa.1975); *Jones v. United Gas Improvement Corp.,* 383 F.Supp. 420, 428–32 (E.D.Pa.1974).[14] Since a Section 1981 action is not tolled by the filing of charges with the EEOC, *Johnson,* supra, the appropriate measuring point for the six-year statute is the date of filing the complaint in the instant suit, August 1, 1974. The class will consist of all Negroes who either terminated their employment with

---

**13.** I reached this conclusion as follows: Groves filed charges with the EEOC on February 10, 1972. In *Wetzel* the court stated, "[the named plaintiffs] cannot represent those who could not have filed charges with the EEOC at the time they filed their charges." 508 F.2d at 246. In the next paragraph of its opinion, however, the court added, "The only employees barred from the class are those who left the employ of the Company more than 210 days before the filing of the charge with the EEOC by [the named plaintiffs]." *Id.* A close analysis of these statements reveals an apparent conflict: not all employees who were discriminated against within 210 days [300 days under the 1972 amendments to Title VII] of the filing of charges with the EEOC by the named plaintiff could have filed charges with the EEOC since the institution of proceedings with the appropriate state agency is a requisite to that extension of time. Therefore, only those who had in fact instituted proceedings with the Pennsylvania Human Relations Commission, either with-

in 180 days of being discriminated against (under one interpretation of 42 U.S.C. § 2000e–5(e), see *Olson v. Rembrandt Printing Co.,* 511 F.2d 1228, 1232 (8th Cir. 1975)), or within 90 days of being discriminated against as provided in the state statute of limitations (under what seems to me the better interpretation of Section 2000e–5(e), see *DeGideo v. Sperry-Univac Company,* 415 F.Supp. 227 (E.D.Pa.1976)), would be entitled to the extended 300 day period in which to file with the EEOC.

But even under the broadest interpretation of *Wetzel,* the Title VII class would only include those who either left defendant's employ or unsuccessfully sought employment with it within 300 days prior to February 10, 1972. This would be narrower than a class defined in terms of Section 1981.

**14.** But see *Davis v. United States Steel Corp.,* 405 F.Supp. 394 (W.D.Pa.1976); *Presseisen,* supra.

defendant in the Philadelphia area after August 1, 1968, or unsuccessfully sought employment with defendant in the Philadelphia area after August 1, 1968.

### B. *Stay of the Class Action*

Defendant's primary objection to this suit proceeding as a class action is the pendency of another employment discrimination suit, *Joseph v. Insurance Company of North America,* Civil Action No. 73–599F, against it in the United States District Court for the Central District of California. INA takes the position that in view of the *Joseph* case this court should "stay the class action aspect of the [instant] complaint . . . . but allow him [Groves] to proceed with his individual claim." [15] From the memoranda and accompanying affidavits of the parties, it appears that the California suit was filed as an individual action by Edward V. Joseph on March 20, 1973, the complaint alleging nothing more than a simple incident of racial discrimination in hiring by INA. Thereafter, on December 20, 1973, Joseph moved to amend his complaint so as to have the case proceed as a class action. INA opposed this motion and on January 28, 1974, it was denied by the court, apparently without opinion. On December 9, 1974, the EEOC was granted leave to intervene in *Joseph.*

There is no question that this court has the inherent power, in the exercise of a sound discretion, to stay an action pending before it. *Landis v. North American Company,* 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936); *Leisner v. New York Telephone Company,* 358 F.Supp. 359, 374 (S.D.N.Y.1973). However, as Professor Moore has noted:

This does not mean that a party to a suit should be entitled to a stay in the proceeding *merely* because he is facing substantially identical litigation in another forum. There must be a pressing need or a clear case of hardship or inequity, before a court should stay proceedings before it so that litigation elsewhere may proceed to judgment. *The burden falls on the party seeking the stay to show that such an order is justified.*

*Moore,* supra, at § 23.93. (emphasis added). Among the factors to be considered in determining whether or not a stay should be granted are: (1) whether the substantive and procedural rights of the non-moving party will be impaired if the stay is granted; (2) the extent to which identical issues and parties are involved; (3) the relative ease of access to sources of proof; (4) the likelihood that one of the actions will reach an earlier conclusion; and (5) the comparative status of the dockets in the competing forums.[16] *Moore,* supra, § 23.93.

The first and second factors are closely related and may be considered together. Unlike the instant suit which would be limited to INA's employment practices in a single geographic area (Philadelphia), the EEOC intervenor's complaint in *Joseph* attacks the defendant's employment practices nationwide.[17] Although there is some dispute as to the perimeters of the employment activity encompassed within the California suit,[18] for present purposes I accept defendant's assertion that, like the present case, *Joseph* attacks all aspects of INA's employment policies and practices. I thus agree with defendant that this case and *Joseph* involve the same issues, and since the latter sweeps nationwide, it has in that respect "swallowed up"

15. Brief for Defendant at 5.

16. A sixth factor, not relevant here, is the possibility that the case will involve questions of foreign law that another forum might be better equipped to resolve. *Moore,* supra, § 23.93.

17. Affidavit of Jules H. Gordon, Esquire, an attorney of record for the EEOC in the *Joseph* case.

18. The Gordon affidavit, see note 17 supra, states that the "principal thrust" of the *Joseph* case is directed at defendant's hiring policies in filling upper level positions. To refute this contention, INA submitted interrogatories to the EEOC which tracked the specific charges of discrimination made by Groves, see note 3 supra, and asked whether the EEOC contended that such activities were within the scope of the *Joseph* case. With one possible exception the EEOC responded in the affirmative.

the instant suit. Brief for Defendant at 13. But while the issues in the two cases may be the same, the parties are entirely different. *Joseph* is *not* a class action and neither Groves nor any of the putative class members here are parties to that suit or have any control over its outcome. That being so, it is beyond dispute that whatever happens to *Joseph* can have no effect on the rights of the putative class members here. *United States v. Allegheny-Ludlum Industries,* 517 F.2d 826, 845 (5th Cir. 1975), cert. denied, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976); *Williamson v. Bethlehem Steel Corp.,* 468 F.2d 1201, 1203–04 (2d Cir. 1972), cert. denied, 411 U.S. 931, 93 S.Ct. 1893, 36 L.Ed.2d 390 (1973); *Rodgers v. United States Steel Corp.,* 69 F.R.D. 382, 388 (W.D.Pa.1975). The fact that the class members in this matter would not be bound by the outcome of *Joseph* cuts both ways on the question of prejudice should the stay be granted. On the one hand, none of the class members would be prejudiced in the sense of having their rights foreclosed or altered if the stay were granted.[19] On the other hand, granting the stay would prejudice the class members in the sense that they would be forced to await the outcome of another law suit to which they are not parties before being allowed to enforce their important Title VII rights. The only arguable reason for such delay is the possibility that members of the putative class might be eligible for and decide to accept whatever remedies might ultimately be provided by the *Joseph* court, thus precluding such individuals from obtaining duplicate relief as members of this class. See *United States v. United States Steel Corp.,* 525 F.2d 1214 (5th Cir. 1975) (on denial of petitions for rehearing and rehearing en banc); *Allegheny-Ludlum, supra.* Defendant has offered nothing to indicate that the *Joseph* case is close to settlement or other final disposition.[20] Indeed, as far as this court has been informed, *Joseph* is still in the pre-trial discovery stage; final resolution of that case thus may be months or years away. The inequity of forcing the class members into a holding pattern for such a period is compounded by the fact that the interests of the plaintiffs in *Joseph*—the EEOC and Mr. Joseph—have not been shown to be in privity with those of the instant class. While an executive agency such as the EEOC is presumed to act in the "public interest," it is entirely possible that that interest may differ—perhaps slightly, perhaps significantly—from the interests of private parties seeking to enforce Title VII. See *Williamson, supra,* 468 F.2d at 1203–04; *Leisner, supra,* 358 F.Supp. at 374. Furthermore, the instant suit has barely progressed past the pleading stage. Therefore, the only prejudice to the defendant at this point by not granting the stay lies in the fact that it will be forced to submit to wide ranging and in some respects duplicative discovery on each side of the continent. Whatever legitimate claim of prejudice this might have engendered is substantially diluted, however, by the fact that INA does not oppose Groves' proceeding with his individual action. In proving his individual claim Groves would be entitled to rely on (and therefore to discover) other instances of discrimination against blacks by INA. See, e. g., *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804–06, 93 S.Ct. 1817, 1825–26, 36 L.Ed.2d 668 (1973). Thus, in terms of the immediate effect on INA, it will make little difference whether this case proceeds as an individual or class action.

Turning to the third factor, it is obvious that this court has much easier access to sources of proof regarding defendant's employment practices *in the Philadelphia area* —the only practices in question in this suit—than does a court in California.

---

19. Since INA does not oppose Groves' proceeding with his individual claims, it is, of course, clear that *he* would not be prejudiced by the stay.

20. If *Joseph* were close to final resolution a different result might obtain. For example, in *Rodgers, supra,* Judge Teitelbaum noted that he had issued a stay of proceedings in a private class action against the steel company "in order to consider the impact of the [nationwide steel industry] Consent Decrees and to permit the settlement process to move forward." 69 F.R.D. at 386.

With respect to factors (4) and (5), the defendant has brought to the court's attention statistics which show that the median time interval from filing to disposition of civil cases is somewhat shorter in the Central District of California than in the Eastern District of Pennsylvania.[21] When combined with the fact that the *Joseph* case was filed before the instant suit, these statistics suggest that *Joseph might*[22] be disposed of before the case *sub judice.* These considerations standing alone, however, are insufficient to overcome the other factors discussed above, all of which weigh in favor of denying the stay.

I conclude that defendant has failed to sustain its burden of establishing that the stay is justified and therefore refuse to stay the class action aspects of this case at this time. Again I stress the fact that this litigation is in its infancy. As it progresses the factors which militate against granting the stay now may change. If it later appears that a stay would serve some legitimate purpose or that the two law suits are unfairly burdening the defendant, I will then entertain motions for appropriate relief. And, as this and the *Joseph* litigation progress I will, of course, "avoid granting relief which is merely duplicative of, or which conflicts with the relief which might be granted [in California]. *Leisner,* supra, 358 F.Supp. at 369–70.

### III. *Motion to Amend the Complaint*

The original complaint sought monetary relief only for Groves himself. Plaintiff now moves to amend the complaint to include a prayer for monetary relief in behalf of all members of the class. Although I share the concerns expressed by Judge Newcomer in *Paddison,* supra, as to the propriety of allowing back pay and other forms of monetary relief to be claimed in a Rule 23(b)(2) class action, in view of the decision of our Court of Appeals in *Wetzel,*

supra, 508 F.2d at 250–52, plaintiff's motion to amend must be granted. In *Wetzel* the court held that the appropriateness of an action for (b)(2) status is to be determined by the alleged conduct of the party opposing the class and not by the type of relief sought. If that party has allegedly acted on grounds generally applicable to the class, as is the case here, then (b)(2) status is appropriate notwithstanding that monetary relief either alone or in conjunction with declaratory and injunctive relief is sought. *Id.*

### IV. *Motion to Intervene or Join*

Margaret Ann Faust has moved for permissive intervention as a plaintiff pursuant to Rule 24(b) or in the alternative for permissive joinder as plaintiff under Rule 20. I conclude that Faust may intervene as plaintiff under Rules 23(d) and 24(b) and therefore do not consider whether she would be entitled to permissive joinder under Rule 20.

The allegations of class discrimination in Faust's proposed Complaint in Intervention are indistinguishable from those contained in Groves' original complaint. The relief requested is also the same. Only the specific discrimination allegedly suffered by Faust personally is different. Faust, a Negro, was first employed by defendant in October, 1971, as a file clerk. From that time until May, 1973, Faust, although qualified, was offered no transfer or promotion by INA. During this time similarly situated white employees of defendant were transferred and promoted as a matter of routine. Also during this time, white employees in the files unit were given higher performance ratings than Faust because of their race. In May, 1973, upon her request only, Faust was transferred to another department and assigned to work as an accounting and coding clerk. Upon being transferred Faust was subject to constant

---

**21.** For 1975 the median time interval from filing to disposition was 7 months for the Central District of California and 12 months for the Eastern District of Pennsylvania. Management Statistics for the United States Courts 1975, at 31 and 103.

**22.** It is to be noted that *Joseph* has already been pending for far longer than the median time for suits in the Central District of California.

harassment by her supervisors and warned about poor work performance, while white employees performing work of similar or inferior quality received no warnings or reprimands. When Faust complained to defendant's personnel office about this treatment, she was thereafter treated worse than before. On numerous occasions during the course of her employment Faust observed meetings held by white supervisors and employees at which racially offensive remarks concerning blacks were made and on one occasion a group of black employees were required to submit to physical examinations in order to determine whether they were drug addicts. On October 22, 1973, Faust received a written warning that her performance was inadequate. The warning again was based on racially discriminatory standards. Faust voluntarily resigned on the following day, but subsequently received a notice from defendant indicating that her termination was involuntary. Faust filed charges with the EEOC and received a right to sue letter from that agency on April 14, 1975.[23] Her motion to intervene or join in this case was filed on November 4, 1975.[24]

 Since the 1966 amendments of the Federal Rules of Civil Procedure, intervention in class actions has been governed by both Rules 23 and 24. *Moore*, supra, § 23.90[1], at 1601. Rule 23(a)(4) requires as a prerequisite to a class action that "the representative parties will fairly and adequately protect the interests of the class." The defendant does not dispute that plaintiff Groves satisfied this provision. See note 5 supra. It might be argued therefore that since Faust is already a member of the class she is not entitled to intervention as of right because the 23(a)(4) finding necessarily means that Faust's interests are "ade-

quately represented by existing parties," *i. e.* Groves. Rule 24(a)(2). Professor Moore accepts this argument but with the proviso that intervention may still be allowed under Rule 23(d)(3):

> Thus a legitimate court determination that representation is adequate and that the class suit may be maintained should preclude a finding that a class member has an absolute right to intervene under Rule 24(a), but should not preclude the court from allowing a form of intervention under 23(d)(3) to improve representation of the class.

*Moore*, supra, § 23.90[2] at 1602 n. 13. Moreover permissive intervention under Rule 24(b) does not require a showing of inadequacy of representation. The question under either Rule 23(d) or 24(b) should be whether the proposed intervention will improve or strengthen the representation of the class. *Id.*

 As noted above, Faust is already a member of the class as defined in section II of this opinion. Her allegations of discrimination are substantially the same as Groves and both Faust and Groves are represented by the same attorney. Thus, allowing Faust to intervene would not seem to strengthen or improve the class representation. Compare *Gaddis v. Wyman*, 304 F.Supp. 713 (S.D.N.Y.1969) with *Gabriel v. Standard Fruit & Steamship Co.*, 448 F.2d 724 (5th Cir. 1971) and *Hurley v. Van Lare*, 365 F.Supp. 186, 196–97 (S.D.N.Y.1973), rev'd 497 F.2d 1208 (2d Cir. 1974), rev'd, 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975). Indeed, it is doubtful that her intervention would have any significant effect one way or the other. On the other hand, INA has failed to show any way in which it will be prejudiced by allowing Faust to intervene.[25] Compare *Dickerson v. United*

**23.** The complaint does not indicate the date Faust filed her charges with the EEOC or whether it was within 180 days of the last instance of discrimination against her, but since she is already a member of the class as defined in section II of this opinion, these matters are irrelevant.

**24.** Since Groves is already a member of the class, the fact that her motion to intervene was

filed more than 90 days after she received the right to sue letter is irrelevant. See note 23, supra.

**25.** INA's brief in opposition to the motion to intervene does little more than restate its argument with respect to staying this case pending the outcome of *Joseph.* I have, of course, already rejected this argument. See text supra.

*States Steel Corp.*, 64 F.R.D. 351 (E.D.Pa. 1974) and *Blakely v. Lisac*, 357 F.Supp. 267 (D.Or.1973) with *Williams v. Kimbrough*, 295 F.Supp. 578, 581 (W.D.La.), aff'd 415 F.2d 874 (5th Cir. 1969), cert. denied 396 U.S. 1061, 90 S.Ct. 753, 24 L.Ed.2d 755 (1970). When faced with similar circumstances, the court in *Epstein v. Weiss*, 50 F.R.D. 387 (E.D.La.1970), granted the motion to intervene.[26] I can see no reason for reaching a different result here. In fact, this is a somewhat stronger case for allowing intervention than was *Epstein*. Groves occupied a professional level position in defendant's organization whereas Faust was employed in a clerical position. To the extent that there may be differences between these types of positions either with respect to INA's present policies (legitimate or not) or with respect to the attributes required for job success, it may be helpful at trial or in formulating relief to have a representative from each group. See *Harvey v. International Harvester Co.*, 56 F.R.D. 47, 48 (N.D.Cal.1972); *Bass v. Richardson*, 338 F.Supp. 478, 491–92 (S.D.N.Y.1971). The motion to intervene will therefore be granted.

### V. *Conclusion*

In summary, then, I conclude that this case may proceed as a class action, the class consisting of all Negroes presently employed by INA in the Philadelphia area, all Negroes who have been employed by INA in the Philadelphia area at any time after August 1, 1968, and all Negroes who have unsuccessfully sought employment with INA in the Philadelphia area after August 1, 1968; that the complaint may be amended to include a request for monetary relief on behalf of the class; and that Margaret Ann Faust may intervene in this action. Appropriate orders will be entered.

---

26. But cf. *Hurley v. Van Lare*, supra.