Benilda ROSARIO, Wanda Jones, Donald Barker, Morgan Jin, Individually and on behalf of all similarly situated non-white Employees, Former Employees or Applicants for Employment at the New York Times Company, and Newspaper Guild of New York AFL–CIO, Plaintiffs,

v.

The NEW YORK TIMES COMPANY, Defendant.

No. 74 Civ. 4457 (CMM).

United States District Court, S. D. New York.

Nov. 27, 1979.

Cohn, Glickstein, Lurie, Ostrin & Lubell, New York City, for plaintiffs; Jonathan W. Lubell, Mary K. O'Melveny, Nan C. Bases, Roy N. Watanabe, New York City, of counsel.

Cahill, Gordon & Reindel, New York City, for defendant; Floyd Abrams, Joel C. Balsam, George Freeman, Reena A. Raggi, New York City, of counsel.

METZNER, District Judge:

The New York Times (the Times), defendant in this class action suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., and the Civil Rights Act of 1866, 42 U.S.C. § 1981, moves pursuant to Fed.R.Civ.P. 56(b) for partial summary judgment against the class claims of discrimination in hiring, assignment, promotion, classification and placement. It also moves pursuant to Fed.R.Civ.P. 23(c) for an order altering the classes previously certified by excluding all unsuccessful past and future applicants for employment.

There are also pending before the court two objections by the defendant relating to discovery matters. The first is an assertion of a First Amendment editorial privilege by the Times to certain deposition questions. The second is an assertion by the Times of a "self-evaluation" privilege in refusing to turn over certain documents.

On November 21, 1975, this court certified two subclasses of persons seeking relief under Title VII, and one subclass of persons seeking relief under Section 1981. The subclasses under Title VII are:

"(1) all non-white and Hispanic persons in positions within the jurisdiction of the Guild under the collective bargaining agreement between The Times and the Guild who have been or will be discriminated against by The Times in the areas of wages or training from April 28, 1973 through the pendency of this action; and

(2) all non-white and Hispanic persons in positions within the jurisdiction of the Guild under the collective bargaining agreement between The Times and the Guild who have been or will be discriminated against by The Times in terms of promotion from October 14, 1972 through the pendency of this action . . . ."

The subclass under Section 1981 is:

"(1) all non-white and Hispanic persons who were, are now or will be employed

by The Times or who have applied or will apply for positions within the jurisdiction of the Guild under the collective bargaining agreement between The Times and the Guild who have been or will be discriminated against by The Times in terms of recruitment, hiring, classification, wages, promotion, advancement or transfer from October 10, 1971, through the pendency of this action, or who have been subject to retaliation by The Times from October 10, 1971 through the pendency of this action . . . ."

The motion seeks to strike the second subclass of Title VII claimants and all discriminatory practices except as to wages in the Section 1981 subclass. Because the wording in the motion does not track the wording in the Section 1981 subclass, I have assumed that the reference in the motion to "hiring" covers "recruitment" specified in that subclass, and that references to "placement". and "assignment" are covered by the word "classification." Finally, the motion does not mention "advancement or transfer" which appear in the subclass definition, but I assume that they are embraced in "promotion," or even "classification."

The motion also seeks to eliminate from the Section 1981 subclass all unsuccessful past and future applicants for employment.

If the motion is granted in toto, the only issues remaining in the case would be discrimination practiced against existing employees in the areas of wages and training.

■ Turning first to the branch of the motion which seeks to eliminate all unsuccessful past and future nonwhite and Hispanic applicants for employment by the defendant. It is true that all of the named plaintiffs are presently employed by the defendant. However, it is also true that the target area of the complaint is clearly to eradicate all alleged discriminatory practices of the defendant affecting the employer-employee relationships of nonwhites and Hispanics.

This case has been in pretrial for several years now, and defendant knew that it was dealing with a claim of basic overall discriminatory practices, including the area of hiring. It seems a little late to raise an objection for the first time that the class representatives are all presently employed by the Times. However, it appears that one of them had previously been denied employment, and that alleged wrong may still be actionable, despite subsequent employment.

I should also point out that possible additional parties exist who were denied employment and all of them are known to defendant from the pretrial proceedings. There could be no surprise or delay in the prosecution of this case if they were added as parties plaintiff. Defendant's argument about the lack of jurisdictional prerequisites by the designated additional parties misses the point. We are not dealing with a class alleging a Title VII claim. The defendant's motion is addressed to a Section 1981 class, and thus the claimed jurisdictional prerequisites are not applicable.

However, it is unnecessary to add such parties because the motion must be denied on the merits. Prior to the decision in *East Texas Motor Freight v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), a majority of the courts adopted the "across-the-board" approach in applying Rule 23 requirements to civil rights cases. The Proper Scope of Representation in Title VII Class Actions, 13 Harv. CR–CL Law Rev. 175 (1978). Some courts stated that the strict requirements of Rule 23 prevented any elasticity of application, and therefore an employee claiming discrimination in treatment may not represent a non-employee who claims refusal of an application for employment because of discriminatory practices. *Lightfoot v. Gallo Sales Co.*, 15 F.E.P. Cas. 615, 619–20 (N.D.Cal.1977); *Williams v. Wallace Silversmiths, Inc.*, 75 F.R.D. 633 (D.Conn.1976); *E. E. O. C. v. Detroit Edison Co.*, 515 F.2d 301, 311 (6th Cir. 1975), *vacated and remanded on other grounds*, 431 U.S. 951, 97 S.Ct. 2668, 53 L.Ed.2d 267 (1977).

The "across-the-board" approach has been defined as permitting any person "claiming to be aggrieved by any particular discrimi-

natory employment practices of an employer alleged to be part of an overall pattern of class based discrimination to sue to end all forms of discrimination by that employer against the class." *Groves v. Insurance Co. of North America*, 433 F.Supp. 877, 883 (E.D.Pa.1977); *Long v. Sapp*, 502 F.2d 34, 42 (5th Cir. 1974). In *Rich v. Martin Marietta Corp.*, 522 F.2d 333 (10th Cir. 1975) the court said at page 340:

> ". . . although these suits are self-help, so to speak, actions, they also have a broad public interest in that they seek to enforce fundamental constitutional principles as well as to advance the rights of the individual plaintiffs who bring the action. [Citations omitted.]"

> "Indeed, the courts have consistently ruled that even though it appears that the named plaintiffs have not suffered discrimination, this fact does not prevent them from representing the class. [Citations omitted.]"

At this point we consider the decision in *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). This was a class action to end alleged discrimination which prevented the hiring of Mexican-Americans as line drivers by a trucker. A plenary trial had been conducted by the district court. The Court reviewed the trial record and found upon "abundant evidence" that the three plaintiffs lacked the qualifications to be hired as line drivers. The Court held (pp. 403–04, 97 S.Ct. pp. 1897):

> "Thus, they could have suffered no injury as a result of the alleged discriminatory practices, and they were, therefore, simply not eligible to represent a class of persons who did allegedly suffer injury."

A number of courts have distinguished *Rodriguez* in continuing to apply the "across-the-board" concept. In *Arnett v. American National Red Cross*, 78 F.R.D 73 (D.D.C.1978), the court was considering defendant's argument that a presently employed person does not raise claims typical of persons denied employment. It found *Rodriguez* inapplicable by stating (p. 77 n. 6):

> "This Court does not believe that the Supreme Court intended, by this language, to preclude an across-the-board attack *by one who was discriminated against*—whether it be in the hiring, promotion, or discharge aspects of the defendant's practices. . . . What the Supreme Court did intend was to preclude the maintenance of a class action by one who was *not discriminated against at all.*"

Similarly, *Beasley v. Griffin*, 18 F.E.P. Cases 1534 (D.Mass.1979) held that a person denied promotion because of allegedly discriminatory practices could represent unsuccessful applicants for employment. The court stated (p. 1537):

> "*Rodriguez* holds simply that a court may not certify a class action where trial on the merits has shown that the named plaintiffs have no claim. It also reaffirms the necessity of meeting the requisites of Rule 23 before a class action may be certified. Its dicta do not signal an end to across-the-board Title VII class actions. A majority of the courts that have analyzed this point agree. [Citations omitted.]"

The "across-the-board" concept relies on a nexus between the class members. *Rodriguez* found lack of merit after trial of the individual claims presented. Nexus was clearly absent. In *Satterwhite v. City of Greenville*, 578 F.2d 987 (5th Cir. 1978), the court said (p. 993 n. 8):

> "Nor is *Rodriguez* or this opinion contrary to the policy favoring 'across the board' Title VII class actions. [Citations omitted.] It is not necessary that the representative suffer discrimination in the same way as other class members, but it is necessary that she suffer from the discrimination in some respect."

At this stage of the proceedings in the instant case such possibility clearly exists.

I am of the opinion that the "across-the-board" approach is the correct one in determining the propriety of class action procedure in civil rights cases. It avoids piecemeal examination of an employer's alleged discriminatory practices where general dis-

crimination is being attacked. It provides an efficient means of disposing of complaints in this area, especially when judicial economy is a pressing problem today.

The motion to alter the certification of the subclass under Section 1981 is denied.

■ Defendant moves for summary judgment on the hiring, classification and promotion claims tendered by plaintiffs. It has submitted the affidavits of four experts. These experts have submitted voluminous affidavits to sustain their contention that a statistical analysis of the Times' hiring, classification and promotion practices clearly evidence the absence of any discrimination in those areas. The affidavits also criticize the methodology of the reports previously submitted by plaintiffs' experts on which plaintiffs' statistical case is based. Needless to say, plaintiffs have answered with an equal volume of material to support their contrary position.

After reading the moving papers, it was inconceivable to me that plaintiffs could succeed in this action. After reading the answering papers, I was somewhat at a loss to understand how the defendant's experts could have reached their conclusions. In any event, the issues simply cannot be resolved on the papers submitted. It is necessary to see and hear the experts on the stand, subject to examination and cross examination, with perhaps some questions from the court seeking edifying answers.

As I presently understand it, one of the problems needing development on a trial is the propriety of the use of multiple regression analysis instead of logit analysis. The plaintiffs claim that:

"Whatever the precise nature of the categories, however, the consensus of scholars is that regression analysis is inappropriate to analyze categorical dependent variables and that alternative methods should be used. One particular method—logit analysis—has proved particularly popular."

Multiple regression analysis is a computational tool routinely used to analyze the relation between certain independent variables or factors and a dependent variable that may be measured on a continuous scale.

The fact that prior cases have approved different statistical methods to prove discrimination does not prevent this court from determining, after a trial of the issues, whether or not plaintiffs' statistical evidence represents a refinement of prior methods which might discover disparities gross enough for legal recognition.

Defendant claims that plaintiffs' statistics leave out too many variables, such as news judgment, writing ability and managerial capability, which are not readily quantifiable. However, it seems to me that these skills should be just as prevalent among minorities of comparable education, experience, achievement, etc. The effect of these missing variables on the existence of the alleged racial disparity is an issue of fact resolvable only at trial.

There is also the question of the definition of the relevant labor market which is one of fact. *Hazelwood School District v. United States*, 433 U.S. 299, 308, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977). Should this be resolved by reference to a national labor market or a local labor market? Should it be resolved by reference to an internal market?

Finally, I should point out that despite statistical evidence of a racially balanced work force, an employer cannot be immunized from liability for specific acts of discrimination. *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 579, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). On the other hand, while specific acts of discrimination may justify a prima facie finding of the existence of a pattern or practice, statistics may be used by the employer to help defeat the claim. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

For all of these reasons a trial is necessary, and the motion for partial summary judgment is denied.

Plaintiffs have filed objections to two rulings by Magistrate Jacobs affecting pretrial discovery.

The Times has refused to produce, except for in camera inspection by the court, a number of documents which it claims consist of self-evaluative material pertaining to affirmative action. I have previously dealt with this problem in another context. *Wright v. Patrolmen's Benevolent Association*, 72 F.R.D. 161, 164 (S.D.N.Y.1976). *See also Gillman v. United States*, 53 F.R.D. 316 (S.D.N.Y.1971); *Banks v. Lockheed-Georgia Co.*, 53 F.R.D. 283 (N.D.Ga.1971); *Bredice v. Doctors Hospital, Inc.*, 50 F.R.D. 249 (D.D.C.1970).

It is clear that a qualified privilege of "self-examination" exists to permit free discussion looking toward compliance with law in this case. Facts, of course, are producible and the objections can be passed upon only by examination of the documents in question. This the court has done, and agrees with the magistrate that except for document 7, the others need not be produced.

Finally, the defendant asserts an editorial privilege in objecting to certain questions asked on deposition. In the letter submitted to the court by plaintiffs' counsel on June 1, 1979, the questions at issue have been identified as appearing on pp. 130–31 and 254–55 of the deposition of Mr. Sulzberger, publisher of the Times, p. 440 of the deposition of Mr. Millones, the assistant managing editor of the Times, and pp. 352–354 of the deposition of Mr. Rosenthal, the executive editor of the Times.

The New York Times, of course, is a commercial venture engaged principally in the collection and dissemination of news for profit. We are not concerned here with what it gathers or what it publishes. We are concerned with the people it hires to carry on its business. Title VII and Section 1981 are directed to business judgments, not editorial judgments. It is necessary, therefore, to look at the questions to which objection has been taken, to determine into which category of judgment the sought-after information falls. If there is a possibility of conflict, we must carefully balance the plaintiffs' interest in the requested discovery with the First Amendment interest sought to be protected. Mr. Justice Powell, in his concurring opinion in *Herbert v. Lando*, 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979), said at 179, 998 S.Ct. at 1651:

". . . when a discovery demand arguably impinges on First Amendment rights a district court should measure the degree of relevance required in light of both the private needs of the parties and the public concerns implicated."

With these considerations in mind, I find the objection well taken to an inquiry into the discussions between Sulzberger and Rosenthal as to the nature of the column to be written by Wilkins. I also sustain the objection to a question regarding a regular minority columnist on the "Op-Ed" page. Finally, the objections are sustained to the questions asked of Rosenthal and Millones as to the reasons for the establishment and discontinuance of the Harlem office. Taking into account the nature of the business of the Times, the selection of the geographical location of doing business is not relevant to the issues in this case.

So ordered.