Roland C. WEBB, David Miller, William Beasley, Vincent Jackson, on behalf of themselves and all others similarly situated

v.

WESTINGHOUSE ELECTRIC CORPORATION et al.

Civ. A. No. 76–172.

United States District Court, E. D. Pennsylvania.

Jan. 31, 1978.

Philip Stephen Fuoco, Philadelphia, Pa., for plaintiffs.

Robert S. Forster, Jr., Asst. U. S. Atty., Philadelphia, Pa., for U. S. Secretary of Labor.

Benson Zion, Bryn Mawr, Pa., for Westinghouse Salary Employees Ass'n.

Robert M. Landis, Philadelphia, Pa., for Westinghouse Elec. Corp.

Harry Lore, Philadelphia, Pa., for Local 107.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiffs brought this action against the Westinghouse Electric Corporation (Westinghouse), alleging that the Steam Turbine

Division (STD) of Westinghouse engaged in acts of racial discrimination which violated. 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Claiming violation of the same statutes, plaintiffs have also sued United Electrical Workers Local 107 (Local 107), which is the collective bargaining unit for the class representatives, and Westinghouse Salaried Employee Association (WSEA), which represents the salaried employees at one STD plant. Specifically, plaintiffs alleged that black persons were discriminated against by STD in recruitment, hiring, training, promotion and all other conditions of employment. Plaintiffs have moved for certification of a class under Fed.R.Civ.Proc. 23(b)(2) to include: (1) all black persons who have been employed at any time in STD since January 20, 1970, and (2) all black persons who have applied or will apply for employment with STD. Westinghouse concedes the propriety of a class comprised of the production and maintenance workers of the Lester production facility, one of four plants in the STD, but contests any further expansion of that class. We will certify a class consisting of: (1) All black persons who have been employed as production or maintenance workers at any time since January 20, 1970 at the Lester, Pennsylvania facility of the Steam Turbine Division of Westinghouse. (2) All black persons who have applied since January 20, 1970 or will apply in the future for employment as production or maintenance workers at the Lester, Pennsylvania facility of the Steam Turbine Division of Westinghouse.

## I. FACTS

STD is one of many divisions of Westinghouse. It is comprised of four plants, one each at Lester, Pennsylvania (7,477 employees), Winston-Salem, North Carolina (1,034 employees), Charlotte, North Carolina (1,005 employees), and Orange, California (201 employees). The California and North Carolina plants receive directives from the Lester plant, but these directives relate solely to business matters. All employment practices, including hiring and established conditions of employment, are set on a plant level.

The Lester facility is the only one of the four plants that is unionized. The employees at Lester are broken down into three bargaining units, represented by the two defendant unions. The hourly employees engaged in production and maintenance work are represented by Local 107. The terms and conditions of the production and maintenance workers' employment are controlled by collective bargaining agreements entered into by Local 107 and Lester management. Salaried employees at Lester are members of two independent bargaining units both represented by WSEA. One unit is composed of technical and clerical personnel while the other is made up of professional and administrative employees.

The four representative plaintiffs in this action are or have been employed as production and maintenance workers at the Lester plant. None of the four has ever worked at any other STD facility, and while at least two of the plaintiffs have applied for promotions to professional or salaried status, their applications were rejected. Three of the named plaintiffs, Vincent Jackson, David Miller and Robert Webb, are still employed by STD, but the other plaintiff, William Beasley was discharged in August, 1973.

Plaintiffs have filed race discrimination charges with the Equal Employment Opportunity Commission (EEOC) against Westinghouse, Local 107 and WSEA. The charges filed by plaintiffs alleged, *inter alia,* that one or more of them had been victims of discrimination in: (1) denial of promotions and transfers, (2) harassment, and (3) termination. In investigating Webb's claims, the EEOC found no reasonable cause for his charge of individual harassment, but it did find cause that blacks at the Lester facility were denied promotions on the basis of race. In the other cases, the EEOC found no reasonable cause to believe that the plaintiffs had been the victims of racial discrimination. The EEOC issued Notice of Right to Sue letters to Miller on October 16, 1974, to Beasley on

October 22, 1975, to Webb on November 6, 1975 and to Jackson on May 3, 1977.[1]

## II. SUMMARY OF RULE 23

█ It is well settled that a plaintiff has the burden of proving that the requisites of Rule 23 have been met. *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Davis v. Romney,* 490 F.2d 1360 (3d Cir. 1974). "As a preliminary matter, he must satisfy all four of the prerequisites contained in Rule 23(a) and then demonstrate that the class he seeks to represent falls within one of the subcategories of Rule 23(b)." *Senter v. General Motors Corp.,* 532 F.2d 511, 522 (6th Cir.), *cert. denied,* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976). In this case, plaintiffs must overcome several hurdles presented by the differences among the class members they seek to represent. The hurdles arise from the following differences within the class proposed by plaintiffs: (1) different plants which control employment policies at a local level with no proof of centralized control, (2) different union affiliations, and (3) diverse job classifications. Plaintiffs try to minimize these differences by relying upon the line of cases which have approved of the "across the board" or "broad brush" approach to class certification. *See, e. g., Rich v. Martin-Marietta Corp.,* 522 F.2d 333 (10th Cir. 1975); *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122 (5th Cir. 1969).

This term has created considerable confusion. It is subject to two definitions, both of which are applicable in this case. First, across the board may be used to refer to all conditions of employment, *e. g.,* wages, seniority, and promotion which pertain to a group of employees. *See Hannigan v. Aydin Corp.,* 76 F.R.D. 502, 505 (E.D.Pa.1977). It is clear that assuming all the other requirements of Rule 23 are met, this allegation would be appropriately remedied in class action litigation. Second, the term across the board may refer to all conditions of employment for *all* employees, regardless of the various employees' trade, situs of work, or union affiliation. Many cases relied upon by plaintiffs have used the term

1. On June 8, 1977, Jackson was permitted to supplement the complaint by filing his Notice of Right to Sue letter.

Both Local 107 and WSEA have objected to class certification on the ground that the plaintiffs in this case lack standing to sue the unions since at the time of the filing of the complaint, none of the plaintiffs had filed timely charges with the EEOC against the unions. Local 107 points out that at the time of the filing of the complaint in this Court, only Beasley had named Local 107 as respondent before the EEOC. However, Beasley's charge failed to fulfill the jurisdictional requirements of Title VII since he had missed the 180-day filing limitation for filing with the EEOC and the 90-day limitation for filing in District Court following receipt of the Notice of the Right to Sue letter. *See* 42 U.S.C. § 2000e–5(e) and (f)(1). At the time of the filing of the complaint, WSEA had not been named as respondent in any EEOC actions. The defendant unions reason that since none of the plaintiffs have fulfilled the threshold jurisdictional requirement of timely EEOC action, then none of them can be members of a class entitled to pursue Title VII remedies. The defendant unions conclude, therefore, that plaintiffs may not represent employees who may pursue Title VII remedies. However, this argument is rendered moot by the supplement filed by plaintiff Jackson. It is well settled that not every class representative must have fulfilled the jurisdictional filing requirements of Title VII. *Schoeppner v. General Tel. Co. of Pa.,* 417 F.Supp. 453 (W.D.Pa.1976). The EEOC claim filed by Jackson included the unions as respondents and charged them with contributing to a wide range of discriminatory practices at the Lester plant. Because of this supplement, we must reject the argument that plaintiffs may not represent the class on a Title VII claim against Local 107 and WSEA.

The supplement to the complaint also negates Westinghouse's contention that the allegations in the complaint of discrimination in hiring and recruitment were not brought to the attention of the EEOC by the representative plaintiffs. Jackson's claim filed with the EEOC charged that "[t]here exists a climate of racial discrimination at Westinghouse that affects all employment opportunities." Exhibit D to Plaintiffs' Memorandum in Opposition to Defendant Unions' Motion to Dismiss. The claim then lists a number of specifics including discrimination in hiring. Any allegations in the complaint of discrimination in recruitment or hiring were either specifically covered in Jackson's charges to the EEOC or could be "reasonably expected to grow out" of those charges. *See Groves v. INA,* 433 F.Supp. 877, 882 n. 9 (E.D.Pa.1977).

in this latter sense. These cases have reasoned that an allegation of across the board employment discrimination necessarily fulfilled the commonality and typicality criteria of Rule 23 since the sole issue was whether the class members were in fact discriminated against.

■■■ However, Judge Troutman has recently cast doubt on the breadth of this line of precedent. In *Martin v. Easton Publishing Co.*, 73 F.R.D. 678 (E.D.Pa.1977), Judge Troutman looked to *Wetzel v. Liberty Mutual Insurance Co., supra,* where the Third Circuit emphasized the need for cohesiveness in (b)(2) class actions because of the res judicata effect of this type of litigation. *Id.* at 682–83 *citing Wetzel v. Liberty Mutual Insurance Co., supra,* 508 F.2d at 256. Judge Troutman reasoned that certain limitations on the across the board analysis were necessary to satisfy this need. He concluded:

> The "across the board" approach may properly be applied to situations where an aggrieved plaintiff was affected by an identifiable policy or practice obviously applicable to others in like status such as pregnancy or illegitimacy or such as *Wetzel* where it was *admitted* that the policy or practice identified was applied to *all* employees and hence all members of the class. . . . Title VII does not automatically grant the right to class action.

73 F.R.D. at 683 (emphasis in original). We agree that the across the board approach, when referring to all employees, may be invoked properly where the plaintiff can identify a specific policy or practice universally applied to all employees. *Cf. Hannigan v. Aydin Corp., supra,* 76 F.R.D. at 510.

Plaintiffs may claim that their's is a charge of generalized discrimination not specifically tied to any particular policy or practice. However, even such generalized discrimination, if alleged on a company or division-wide basis, must have some process or channel through which it may be effectuated. We also would find, therefore, that the across the board analysis might apply to a grievance of generalized discrimination where the plaintiff could present some evidence of centralized control over employment practices.[2] *See Taylor v. Safeway Stores, Inc.,* 524 F.2d 263 (10th Cir. 1975); *Droughn v. FMC Corp.,* 74 F.R.D. 639 (E.D. Pa.1977). A simple invocation of the broad brush theory does not serve the policies underlying Rule 23 and thus will not satisfy the inquiry required by that Rule. *See Doctor v. Seaboard Coast Line R. R.,* 540 F.2d 699 (4th Cir. 1976); *McFarland v. Upjohn Co.,* 76 F.R.D. 29 (E.D.Pa.1977). We do not seek to interpret Rule 23 in an overly strict fashion, but merely assure that the criteria of Rule 23 are fulfilled.

■■■ The existence of such a universally applicable policy or practice, or centralized control should be investigated at the class action stage. Such an inquiry would not contravene the teaching of *Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732, that the class action motion does not permit the court "to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Id.* at 177, 94 S.Ct. at 2152; *see Doctor v. Seaboard Coast R. R., supra,* 540 F.2d at 707–10; *Presseisen v. Swarthmore College,* 71 F.R.D. 34, 43 n. 10 (E.D.Pa.1976); *Lim v. Citizens Sav. & Loan Ass'n.,* 430 F.Supp. 802 (N.D.Cal.1976). At the class certification stage,

---

**2.** While adhering to the across the board analysis, at least one court has recognized that the structure and organization of the defendant bears upon the commonality and typicality requirements of Rule 23. In *Hannigan v. Aydin Corp.,* 76 F.R.D. 502 (E.D.Pa.1977), Chief Judge Lord specified "the structure, size and location of the company and its branches," and "the centralization of management and personnel decisions" as two factors to consider in assessing the issue of commonality. *Id.* at 509, *citing Harriss v. Pan American World Airways, Inc.,* 74 F.R.D. 24, 41 (N.D.Cal.1977). The

court also found that a nexus between plaintiff's claims and those of the class members is necessary to satisfy the typicality criterion in a Title VII case. *Hannigan v. Aydin Corp., supra,* 76 F.R.D. at 507–508. In refusing to certify a class consisting of several divisions of the corporate defendant in that case, the *Hannigan* court "conclude[d] that the fact that these facilities are part of the same legal entity by itself is insufficient to establish a nexus between plaintiff's claim and those of employees of other divisions." *Id.* at 510.

it [is] entirely proper for the District Court, on the basis of the discovery had, to identify the character or type (*but not the merits*) of each plaintiff's claim and then to determine whether there was a class to which such claim of the plaintiff was common and of which it was typical, sufficiently numerous to justify class certification.

*Doctor v. Seaboard Coast Line R. R., supra,* 540 F.2d at 708–09. (emphasis in original). With these considerations in mind, we turn our focus to the specific requisites of the class action rule as they relate to the categories of employees sought to be represented.

### III. ALL STD PLANTS

The plaintiffs purport to represent employees at all four STD plants. Paragraph 29 of the Complaint contains a number of factual averments which if proved might show that the plaintiffs fulfill the Rule 23(a) requirements of typicality and commonality. For example, the plaintiffs have alleged that Westinghouse "maintains educational and other standards and criteria for hiring and promotion which are not necessary for the safe and efficient performance of the jobs involved, and which have the effect to deny black persons equal opportunity for hiring and promotion." ¶ 29 E of Plaintiffs' Complaint. The plaintiffs, however, have not pointed to any particular identifiable policy which applies to all employees at the various STD plants. *See Droughn v. FMC Corp., supra,* 74 F.R.D. at 642. Indeed, the record shows quite the opposite. Defendant has submitted affidavits stating that all personnel decisions and employment conditions are set by management at each individual plant. Plaintiffs have countered these affidavits with organizational outlines of Westinghouse and its various divisions. However, these organizational outlines reveal nothing but a corporate skeleton of Westinghouse which is probably very similar to many large diversified corporations. Also, plaintiffs have relied on the number of employees transferred in the Power Systems Company of Westinghouse, but have not pointed

to the number of transfers in STD. Finally, the plaintiffs argue that Westinghouse's Personnel and Administration Department possesses overall responsibility for the guidelines controlling personnel practices, and are responsible for individual programs. Once again plaintiffs have not shown that this division has indeed recommended any pervasive plan for STD or even for individual plants within STD. From the present record, we must conclude that personnel practices and employment conditions do not emanate from the Lester plant, but rather are established by a plant manager located at each STD facility. The complete autonomy of each plant with respect to personnel decision making prevents them from satisfying the commonality and typicality requirements of Rule 23(a). Therefore, black employees and black applicants for employment at STD facilities other than the Lester, Pennsylvania plant will be excluded from the class that plaintiffs may represent.

### IV. JOB CLASSIFICATIONS

Plaintiffs, who are all production and maintenance workers, seek to represent the salaried employees at the Lester facility. The concern that arises in this context is adequacy of representation.

In evaluating this requirement, we find guidance in Judge Newcomer's opinion in *Dickerson v. United States Steel Corp.,* 22 F.R.Serv.2d 866 (E.D.Pa.1976). In that case, the court had certified a class initially of all employees at one of defendant's production facilities. *Id.* at 867. On reconsideration, the class was narrowed by excluding management, technical and clerical employees. *Id.* at 868. Since all the representative plaintiffs were production and maintenance workers, the court concluded that they would not adequately represent the claims of the management, technical, and clerical workers. *Id.* at 867–68. Judge Newcomer reasoned that the class representatives' lack of experience at other levels of employment might prevent them from detecting discrimination which might manifest itself differently in varying sectors of

the work force. *Id.* at 867. The court noted that this danger was a weighty factor in light of the res judicata impact of class action litigation. *Id.* at 868.

■ We harbor the same fears that were identified in *Dickerson.* The plaintiffs in this case have only served as production and maintenance workers at the Lester plant. Their lack of experience in the salaried positions might prevent them from perceiving discrimination in those positions. Moreover, since the salaried employees and plaintiffs are represented by different unions, the plaintiffs' unfamiliarity with the terms of WSEA collective bargaining agreements exacerbates the detection problem. Therefore, plaintiffs may not represent other job classifications from the Lester facility. We do note, however, that this restriction of the class does not preclude plaintiffs from claiming discrimination in promotion of production and maintenance workers to salaried positions since this is clearly a condition of employment of the production and maintenance group. *Id.* at 868 n. 1.

## V. APPLICANTS

We must next determine whether plaintiffs are entitled to represent past and future applicants for production and maintenance jobs at the Lester plant. Westinghouse contends that *Dickerson* also disposes of this issue.

■ A class representative is an inadequate representative if he or she possess interests which are antagonistic to those of the class. *Wetzel v. Liberty Mutual Insurance Co., supra,* 508 F.2d at 247. This principle forms the foundation for Judge Newcomer's conclusion in *Dickerson* that present or discharged employees cannot adequately represent the interests of unsuccessful job applicants. 22 F.R.Serv.2d at 868. The court there first focused on the holding of *Franks v. Bowman Transportation Co.,* 423 U.S. 814, 96 S.Ct. 25, 46 L.Ed.2d 32 (1976) that persons who were not hired because of discrimination are entitled to seniority from the date they would have been hired. Since this grant of retroactive seniority would place some rejected applicants ahead of present employees in the contest for promotion or benefits, Judge Newcomer concluded that there was a clear conflict between these groups. 22 F.R. Serv.2d at 868.

■ However, we cannot agree that *Dickerson* controls on the facts of this case. The antagonistic interest can exist only if the applicants' retroactive seniority, assuming they prevail, will work to deprive the named plaintiffs of some benefits. As is noted later in this opinion, the class will be limited to persons who allege that they were discriminated against after January 20, 1970. All the representative plaintiffs began work with Westinghouse prior to 1968. Thus, these plaintiffs are not in a position to be deprived of any benefits or privileges by a grant of retroactive seniority to job applicants who have been rejected since January 20, 1970. We conclude that there is no antagonistic interests which would prevent these plaintiffs from adequately representing rejected job applicants.

Since we have already concluded that personnel policies are set on the plant level, plaintiffs fulfill the commonality and typicality criteria. The plaintiffs have gone through the hiring process and thus there is no danger that any discrimination in that process will go undetected because of unfamiliarity.

■ With respect to future applicants, we are guided by the following statement in *Wetzel v. Liberty Mutual Insurance Co., supra,* 508 F.2d at 254:

> [T]he district court may well conclude that affirmative relief is necessary to completely dissipate the effects of the Company's discriminatory policies. If it so finds, the inclusion of future employees in the class may be useful.

We conclude that the class to be represented by plaintiffs should include black persons who have applied in the past or will apply in the future for production and maintenance jobs at the Lester, Pennsylvania plant.

## VI. TIME

Time is the final dimension used to define the class to be certified. This dimension depends upon the statutes of limitations which apply to foreclose the claims asserted by the class representatives.

Under their Title VII theory, the plaintiffs may represent those persons who could have filed individual actions with the EEOC at the time that the representative plaintiffs filed their charges. *Id.* at 246. Title VII requires that charges be filed with the EEOC within 180 days of the alleged act of discrimination or within 300 days of the act if a charge has been filed with a state agency responsible for processing complaints of discrimination. Among the representative plaintiffs, William Beasley was the first to file his complaint with the EEOC. His complaint was filed March 14, 1974. Since Beasley worked in Pennsylvania, a state which had an agency responsible for processing complaints of employment discrimination, *see* 43 P.S. §§ 951 *et seq.*, the class will be defined by the 300-day limitation.[3] Therefore, the cut-off date on plaintiffs' Title VII theory should be May 18, 1973.

With respect to plaintiffs' § 1981 claim, the class is limited by the pertinent state statute of limitations. *Wilson v. Sharon Steel Corp.*, 549 F.2d 276 (3d Cir. 1977). Westinghouse contends that we should apply Pennsylvania's 2-year statute, 12 P.S. § 34, which governs most personal injury cases while plaintiffs contend that their § 1981 action should be measured by Pennsylvania's 6-year statute, 12 P.S. § 31, which restricts actions involving contracts or interference with contractual relations. Thus, we must determine which state statute is most analogous to plaintiffs' cause of action. "We can best assess the similarity of the various state law torts to [plaintiffs'] claim from three perspectives: (1) the defendant's conduct, (2) the plaintiffs' injury, and (3) the relief requested." *Meyers v. Pennypack Woods Home Ownership Assoc.*, 559 F.2d 894, 901 (3d Cir. 1977). Since this suit arises out of the employer-employee relationship and the employee's right to contract, we conclude that the 6-year statute should be applied. *See Groves v. INA,* 433 F.Supp. 877, 884 (E.D.Pa.1977) and cases cited therein.

The suit was filed on January 20, 1976, thus the class shall include all blacks who were employed by defendant after January 20, 1970 or whose applications for employment were rejected by defendant after that date. Since at this stage of the proceedings there appears to be no appreciable difference between plaintiffs' claims under § 1981 and Title VII, the class will be defined by the limits of the § 1981 claim. *Id.* at 884.

## VII. RULE 23(b)(2)

Plaintiffs' claim that defendant engages in racially discriminatory employment practices at the Lester facility clearly fulfills the Rule 23(b)(2) requirement that "the party opposing the class has acted or refused to act on grounds generally applicable to the class." *See, e. g., Wetzel v. Liberty Mutual Insurance Co., supra,* 508 F.2d at 250; *Groves v. INA, supra,* 433 F.Supp. at 883.

---

**3.** Beasley did not file a claim with the Pennsylvania Human Relations Commission so that his individual claim was controlled by the 180 day limit. *See DeGideo v. Sperry-Univac Co.,* 415 F.Supp. 227 (E.D.Pa.1977). Westinghouse argues that Beasley's failure to file with the state commission is binding upon the class members. Thus, Westinghouse concludes that since Beasley's claim was restricted by the 180-day limitation, this should also limit the class. We do not agree. The only element that is binding upon the class is the date upon which the representative plaintiff filed his charges with the EEOC. The class members are not limited by the method that the representative plaintiff utilized. Since class members could have filed with the Pennsylvania Human Relations Commission, the 300-day limitation provides the proper measure to be used for class definition purposes. Thus, the period will be computed 300 days from the date that Beasley filed his complaint with the EEOC.